Mr. Marcus. Thank you. The named plaintiffs in this case are homeless alcoholics who Virginia has designated habitual drunkards. As a result of that designation, plaintiffs have been repeatedly arrested, prosecuted, and incarcerated for possession of alcohol. The circumstances and frequency of their arrests, including being in a Walmart store, sleeping or standing near beer cans, clearly demonstrate they're being targeted because of their status. The parts of the interdiction statute that authorized Virginia to do this violate plaintiffs' rights under the Eighth Amendment against cruel and unusual punishment. What gives you standing? The arrest? Is it an arrest? What gives you standing? We have standing because there have been successive arrests and prosecutions and convictions and the fear, the reasonable fear and threat of imminent future arrest and prosecution. So one question I had here is why isn't this particularized? If you have an as-applied, why not bring an as-applied Fourth Amendment challenge if you have, if you've been unlawfully arrested or arrested without probable cause? I mean, the thought occurred to me that this, rather than trying to go against the constitutionality of the statute in the face of the prior precedent, why you wouldn't go at it with a Fourth Amendment, with Fourth Amendment claims? Well, let me let me explain. I think we have, I'll explain why I think we have very strong claims under the Eighth Amendment and under the Fourteenth Amendment right to due process and equal protection. With the Fourth Amendment, I mean, here we're talking about, I guess what the session under the, under the interdiction statute. So I haven't, I haven't evaluated the strength of a Fourth Amendment claim, but we did, we did bring the claims we brought and we do believe they are quite strong and I'll explain why your precedent, Your Honor, doesn't stand in the way of our Eighth Amendment claim. And we want to be mindful that at this stage, this preliminary stage, all plaintiffs need to show is that their claims are plausible. And we believe that we have clearly met the plausibility standard and therefore the district court should be reversed. And you have an adverse precedent in the Fisher v. Coleman case because it rejected an Eighth Amendment challenge to the interdiction, to the Virginia interdiction standard, but it was brought by a plaintiff on Eighth Amendment grounds. And I didn't get much farther than that because I didn't see how we had any authority to overrule that decision. Let me explain, Your Honor. I think there, there are two principal reasons why you, this panel itself can address that and reconsider the Fisher panel decision. The first is that the cases are distinguishable. This case, we allege in our complaint that the alcohol use by, the alcohol possession by our clients is compelled. In the Fisher case, there was no, no such finding and the record didn't establish for support that the alcohol use by the plaintiff was compelled. So, wouldn't that have faced your Eighth Amendment challenge? Well, the court, the reasoning of the court seemed to sweep more broadly than the facts. I would agree with that. But I think that the facts are still, are still relevant to the claim and the court did, did discuss the fact that there was no record support for that. I just worry you try to make a distinction that would be perceived as a very disingenuous one. Well, and let me, and let me go into the second reason. I don't, I don't think it would be disingenuous. I think if you look at all of those old cases that are, you know, 35 years or older, all of those cases, including the Powell decision, which I'm going to talk about as well, all talk about how they're, you know, the science isn't clear. It wasn't clear at the time that, you know, you could establish that an alcoholic was actually compelled to, to drink, to consume alcohol. And, you know, 35 years later, we believe we can make that case now. And so, you know, you had a better chance at the time of Fisher than you do now because the Powell case went a long way to limiting Robinson to status questions and not acts. And the only criminal provisions here, I think it's crucial that 4.1333 is a civil statute. And the only criminal provisions here, which are 322 and 305, all refer to acts, possession, purchase, possession. Yes, Your Honor. And if I could just, I want to get, just get back to my second point real quick, and then I will answer your question on why you can, the panel can reach the Fisher decision. The first was the distinction in the facts between the two cases. The second is that there's been intervening Supreme Court precedent, very recent Supreme Court precedent, that talks about how in deciding whether there's an Eighth Amendment violation, the court looks at the objective indicia of society's standards. And a key indicia is how other states address a particular problem. And in this case, Virginia is a clear outlier. There's at most one other state, and we're not even sure that one other state even does prohibit this, but it's clear the 48 other states don't prohibit this conduct. So it's clear that this is, Virginia's provision is an outlier. And under Supreme Court precedent, that's a very relevant... I mean, I'm not making an argument one way or wouldn't make an argument one way or another as to the advisability of the law or lack thereof. That's a matter for the Virginia legislature. But what I would say is that historically, the Eighth Amendment, it seems to me, has had maybe its greatest force outside the area of capital punishment. But it's dealt primarily, primarily the Eighth Amendment on conditions of confinement and punishment in the sense of capital punishment. And the Eighth Amendment has had relatively less to say about substantive state criminal law. And in this case, it's not even a criminal law. I mean, what's crucial to me, and it runs through the due process and equal protection and Eighth Amendment challenges, is that this is a civil provision. And of course, it relies upon a prior criminal conviction, but in part. But the fact that it would rely in part, not in whole, upon a conviction for driving while intoxicated, that is not reliance upon a criminal conviction as that kind of predicate. Doesn't seem to me enough to transform a civil statute into a criminal enactment. And some of the arguments you make might have greater force if it were a criminal enactment. But one of the difficulties I have is, and I think the prior case of Fisher v. Coleman, this is civil, not criminal in nature. Well, let me explain, Your Honor. I respectfully disagree. The possession provision is a criminal prohibition, and our clients have been repeatedly incarcerated for possessing alcohol as habitual drunkards because of their branding as habitual drunkards. And so I understand that. But if a drug addict came into court and said, my addiction is compelling, I really have to go and have my fix. And I think that addiction is very strong, probably very analogous to an alcoholic addiction. Would we ever say that possessing, that person's possession of drugs could not violate the law because he was compelled to do it because of his status as an addict? No, Your Honor. And we, and we, That conduct would be illegal for everybody. That's right. I mean, Your Honor. Not just the person with the status. Yes, as we, yes, yes, Your Honor. As we explained in our brief, that's a universal prohibition. We're not asking for a special exemption from a universal prohibition. The distinction here is that Virginia has carved out a narrow category of individuals who are precluded from doing something, prohibited under criminal law, prohibited from doing something. That's a substantive attack on their judgment. In other words, they're saying people who are habitual drunkards should not be consuming alcohol. That's a, that's a, you know, we had prohibition that prohibited alcohol for everybody. But these are judgments made by the legislature. And they're saying that, okay, people who have been convicted of driving while intoxicated or people who are declared habitual drunkards shall not possess or drink alcohol. And anybody who does commits a misdemeanor. So the status is, narrows the class to which the crime applies. But it's just, we, we also prohibit people under the age of 18 from drinking alcohol. And we have lots of classifications for people committing crimes. And in this case, the legislature decided that habitual drunkards should not be drinking. Now, you don't attack that proposition. I don't think you could. What you're basically saying is because they're habitual drunkards, they're compelled to drink the alcohol. And therefore, that act is really not a free act or whatever. I can't quite find out the difference. It's the Powell argument, the Robinson Powell argument. Right. Exactly, Your Honor. And under Robinson, there are limits to what the state can do. And, and here, that, that is our argument, that effectively, through this habitual drunkard and in possession provision, the state is impermissibly targeting status. And, and with respect to homeless alcoholics. Because homeless alcoholics have no choice but to drink. And to do so in, and to do so in public. And the homelessness is key to your argument. Yes, it is. Because they have no choice but to do so in public. They have no, no way to avoid it. And so, they're being convicted over and over again. Arrested, convicted for manifesting their addiction. It's, they're, here, there's no, there's no separation between the status and the conduct for homeless alcoholics. Because the conduct, the possession of alcohol, is inherent to their condition. And they are being, they are being targeted for that behavior. Unlike most people, because most people are able, most adults are able to drink. So there hasn't been a finding that, or a decision that, that this conduct generally is dangerous. They're focusing on a narrow category of people who can't control that, that conduct. And so, that is why in this case, it, it is status. There's no, there's no distinction. It's, it's status that's driving, that's defining the effect. The statute isn't, the statute's not written that way. It certainly doesn't single out homeless persons or alcoholic persons. It's written in general terms. Well, we, we're, we're focusing on the habitual drunkard provision, your honor. And we do think that singles out homeless alcohol, homeless alcoholics. People could be a habitual drunk, drunkard in their own home. Well, your honor, the state, the, the state concedes and says the statute, the habitual drunkard statute targets public drunk, public behavior. Well, the. Public habitual drunkenness not. The Fisher v. Coleman case was brought by a homeless alcoholic. And then, and still the challenge was, was rejected. I'm Yes. Well, if I, and I wanted to get back to you, because you mentioned the Powell case as well. I think it's critical for this court to, to recognize that Fisher misapplied the Powell decision. The Powell decision was a four-member plurality decision. There were not five. Whether you think he misapplied it or not, it's, it's still our precedent. Well, it, it is, except again, for, I think for two reasons. This panel can address the decision because it's distinguishable on the facts and because there's been intervening Supreme Court precedent on, on the outlier nature of a punishment. I'm sorry? Fisher case answered this exact question. Well, we, we respectfully disagree. We think that, again, that the facts are different and that there's new law that sheds new light on the strength of the Eighth Amendment claim. And, and it did, and it, and again, it was a basic, basic error, a fundamental error in interpreting a Supreme Court decision when there were only four votes for the, for the rationale of not extending Robinson to conduct symptomatic of alcoholism. Justice White provided the fifth vote and he could not have been more clear that he disagreed with that rationale and that had the, had the defendant's conduct been compelled, had he been compelled to be in public and had he been compelled to drink, he would have sided with the Robinson case dealt with, with criminalizing that status. And 333 is not criminalizing the status of a habitual drunkard. I mean, again, the difficulty is it's a civil provision. Robinson is as different as night and day because it, it, it posed a criminal sanction upon a status. And this statute doesn't impose a criminal sanction upon a status. The criminal sanctions are reserved for acts. In, in, in 322, the criminal sanction is reserved for the purchase or possession. And I don't, I, as far as 333 is concerned, I think you would have a stronger argument if there, if, if, if there were criminalizing in some way the status of being a habitual drunkard when the habitual drunkard wasn't even possessing alcohol. But that isn't what this statute does. Your Honor, can I, my time is up. Can I answer your question? Yeah, you can, but you've, you've got some rebuttal time as well, of course. Okay, do you want me to, I can wait till the rebuttal. Why don't you answer it in rebuttal, okay? Okay, thank you. Mr. Marcus. May it please the Court, Trevor Cox from the Attorney General's Office for the Appellees. In the exercise of its police powers and regulation of alcohol, Virginia has chosen when, where, and to whom alcohol beverages may be sold or used. The General Assembly has long prohibited the use of alcohol by certain categories of people, including those under the age of 21, and then those who are subject to interdiction orders because they have been convicted of driving while intoxicated or they've shown themselves to be habitual drunkards. The question I have is how can this be a status crime when there's no crime? Well, Your Honor, we, we agree with you. Robinson and Powell set forth that analysis and, and distinguished between the two where you have the status of being addicted to narcotics, you can't criminalize that, but you can criminalize acts, and that's what Powell said, and that's what this Court finds to be true. It's not until you engage in an impermissible act that there's a, that there's a misdemeanor conviction attached. In other words, the, the scheme such as it's set, whether it's advisable or not, I don't know, but the question here is whether it's unconstitutional, and the, the Virginia statute, at least this can be said for it, is that it differentiates very carefully between status and acts, and it very carefully refrains from ever criminalizing any kind of, you know, any crime. When you commit the act, there's no criminal sanction, only when you commit the act, and, and, you know, if you, that, that seems to me the very differentiation between status and acts that the Supreme Court was, was after and has always been after. I, I agree, Your Honor, and I would point out that... Excuse me, it's all done in this Virginia statute. It didn't have two parts, but it was all one part. Would it be unconstitutional? No, because it's still not criminalizing status, it's criminalizing, criminalizing acts, and I would point out that this... Okay, I appreciate your answer. How do you reconcile that with what the concurrence, the important fifth vote was in Powell, which you don't seem to want to talk about and which we didn't talk about in our earlier case. Sure, I would point out that, that Justice White said in his concurrence, I cannot say that the chronic alcoholic is shielded from conviction when he has knowingly failed to take reasonable precautions against committing a criminal act. So here, the criminal act is violating the interdiction order. Do you remember where he talked about homelessness? Yes. And if you're not able to, that's the way he read the record there, that this person was not homeless, not being able to do this in his own house, so the public alcohol is in public sanction didn't apply to this person. Sure, so that was dicta. But he sort of, well, it's not dicta for Justice White, it was determinative for Justice White and he was the necessary fifth vote. That's why, just, if you could explain to me how I can rationalize that with what you're saying here. Sure. So the status of being homeless or being an alcoholic is not criminalized here. What's, what the only status at issue is, have you been made subject to an interdiction order because you've been intoxicated while driving or you've shown yourself to be a habitual drunkard. It can apply to people who are homeless, who are non-homeless, to alcoholics and non-alcoholics. Homeless and alcoholics. Two parts. Homelessness and alcoholism. That's in the statute? I didn't know homelessness was in there. It's not, Your Honor. As a matter of fact, the public... That is what they're saying is punished here. That's what they're saying is punished, and my point is that that is not what interdiction does. Interdiction... What if the statute said that? ...said that if you are a homeless alcoholic, that is criminal? Said exactly the same thing, but homelessness was in the statute. If homelessness was a status that was criminalized in the statute, then we wouldn't be defending it the same way. That would be, if you're criminalizing status... In the same way, would you be defending it? I'd have to see exactly what the statute is, Your Honor, but if it's a status... ...any possession. It doesn't say possession in public or it doesn't say possession by homeless. It says any possession. That's correct, Your Honor. And then it says public drunkenness. Those are the only time that the public is used, but it says if you are an habitual drunkard, you cannot possess alcohol. That's right. It's similar to... Am I incorrect that habitual drunkard has been traditionally and long regarded as being homeless? I don't think that's anywhere on the record. I think if you were... It isn't a euphemism for homeless people. You don't think that there's any case law that says that? Nothing says that. There may be. I'm not aware of it. I don't think the counsel from the other side has cited it either. Habitual drunkard entered the statute in 19... You have to take a statute as it's written, and we have to take a statute as it's written. And, you know, someone who's a habitual drunkard is a homeless person. I don't know. For example, you can have someone who has a home and is prone to going to a bar and buying a drink and getting loaded. That person, even though he came from home and is planning to return home, would still be misdemeanor provisions in the other two provisions for criminal act. So what I'm saying is, as an empirical matter, there are a great many non-homeless people who are habitual drunkards and who engage in public drunkenness even because they go to a bar or because they go to a party, but they have residences or apartments or places that they go to sleep at night. And so it isn't simply as an empirical matter. This isn't... I think it writes... I don't think as an empirical matter that you can equate these two things. Yes, so the interdiction applies whether you're homeless or non-homeless, you're an alcoholic or non-alcoholic. Can I ask a question? Yes, Your Honor. I thought this was an as-applied challenge. It is, Your Honor. And the allegation is that these are homeless. Yes, and we accept that they don't have a permanent place. We're not worried about the person that has a home, goes out and gets loaded and comes back. He's not represented by the class that's challenging him. That's correct. That's correct. But on its face, though, the statute does not distinguish. But it's not an as-applied challenge, right? That's correct, Your Honor. I would also point out that, again, it applies whether you're homeless or not. In Charles v. Commonwealth, which is a 1945 Virginia Supreme Court case involving whether somebody... But the as-applied challenge, it would be odd to say that it was unconstitutional... to draw a distinction between the two and say that it was unconstitutional as applied to the homeless, but perfectly constitutional as applied to this other class of persons. I don't know where we would... Isn't that the distinction that Justice White made? Well, what Justice White, I think... It's unclear what he would have said in this case, I think. Reading the opinion, I mean, there's certainly dicta in there that says we're not sure what we would do with homeless. Why is it dicta when it's something that you don't agree with? Well, it can be both of those things. It's what his opinion was, right? I'm sorry? It's his opinion. He's only the fifth vote, but it's his opinion, the whole thing. But he also said he did not agree that somebody could not be prosecuted if they'd knownly failed to take feasible precautions against committing a criminal act. Here, the criminal act is a violation of the order, just like, you know, you have a civil protective order that's civil in nature, but it's criminal for violating it. Or a suspension of your license is a civil proceeding. It's criminal for driving on a suspended license. A child support order is civil in nature. It can be criminal to violate a child support order. So that's what we're dealing with. I think that Justice White's explanation there would hold. To Justice Wilkinson's, excuse me, Judge Wilkinson's point, it would be strange to try to distinguish between homeless and non-homeless and how this statute would move forward. Because, you know, their argument would have homeless alcoholics being able to avoid prosecution for violating interdiction orders, but not non-homeless. The whole problem that the statute is getting at here are problems associated with public drunkenness. And those included very dangerous driving and the accusing, and they involve domestic abuse. And the number of problems goes on from there. Now, the Virginia legislature sought to attack this problem as a whole under its police powers. And it would just, and to say that public drunkenness is less of a problem when you're talking about the homeless than it is with people who are not homeless. You can't say that public drunkenness is more or less a problem with the homeless or with the non-homeless. It is a generic problem. It is a problem that affects society as a whole. It is a problem that is, the acts are committed by people from all walks of life. There are some very well-to-do people that are total drunks and go out in their cars and put other motorists at risk or behave assultively when they get drunk at a bar. And they can be very rich, privileged people. And it doesn't become more or less of a problem when you're talking about this segment or that segment. It is a problem wherever it occurs. Perhaps unsurprisingly, we agree fully with your honor. What Virginia has done is treat people who have been interdicted, who have shown through their conduct that they can't be trusted with the privilege of consuming alcohol. It's not after the status, it's after the problem. That's correct. The people who have shown through their conduct that they can't be trusted to consume alcohol, just like some people can't be trusted to drive on public roads because of their conduct. You interdict those people. You suspend their license. You prevent them from doing that and make it a crime to violate that civil interdiction order. The due process claims we don't think are any stronger because, again, the interdiction process is civil in nature. If plaintiffs do have a problem with the specifics of their being prosecuted, that's a matter for individual proceedings in state court. There are a number of instances where they cited in the complaint. Well, the due process claim has all kinds of problems, whether there's a protected liberty interest. And, of course, it provides for notice in a hearing and an equal protection case as a rational basis for it. There's no fundamental right of suspect class. But the basic problem, as I see it for plaintiffs' position, is it is trying to make this Virginia statute into a status crime. And that is what it is not. It is not a status crime. It's a civil provision. It imposes no fine. It imposes no criminal penalty. It relies in due process terms not only upon a notice in a hearing, but for the due process inherent in the prior conviction. Now, you know, whether Virginia is well advised to pursue this particular approach, I don't know. But that's a question for the Virginia legislature. It's a policy question for the Virginia legislature. It isn't a status crime. We'd have to rewrite the statute to make it such. And the Virginia Court of Appeals in deciding the Jackson v. Commonwealth case in 1991 said all the same things that you're saying, including that it's a matter for the General Assembly about how it chooses to meet this public health problem. I want to address one more thing. The minute that they tried, the minute the Virginia legislature tries to attach even the most minor criminal statute, a criminal penalty to the status of habitual drunkenness, then it's crossed the line. The minute the Virginia legislature attaches a criminal penalty to the status, to the pure status, irrespective of any act, of habitual drunkenness and say, oh, you're a habitual drunkard. We're going to throw you in jail for the night. That becomes a different story. All right, you're a habitual drunkard. We know you. We know your type. We're going to put you in jail for a night or a week until you dry out. Just because you're a habitual drunkard, whether you're drinking or doing anything else, then you run into a real Robinson problem. But that is not this. That's right. That's right. I just want to make one more point to Judge Nehemiah's question about drugs and Judge Motz's response that, well, that's conduct that no one can do. I think there are certainly provisions, conditions in probation, for instance, when sex addicts or sexually violent predators are not permitted to consume or use computers or pornography. So those are things that other people could use or consume, but not for them because they have shown themselves not to be able to trust it. My point on the drug addict is the distinction between status and conduct. In other words, we do not penalize people who are drug addicts because they're addicts. We penalize them when they possess drugs. And the fact to whom it applies may be an equal protection argument, but it does not address the status versus conduct distinction made in Robinson and applied in Fisher. Right. Right. I just want to make clear to you that there are lines Virginia may not cross and that you can't go around the street, you can't send a policeman around the streets rounding up habitual drunkards, and then it becomes a homeless problem big time. And you can't do it because that's status criminalization. And you haven't tried to do it. No, Your Honor. We agree with you that that would violate Robinson. Another example of a sort of a civil protective order that might be violated is like a stalking order. If somebody is obsessed with an individual and there's a protective order so that they can't be near that person, they can't, even though other members of the public could be close to Jane Doe, that person can't because the conduct shows that they can't be trusted near them. If the person violates that, that's criminal. These are arguments for the policy. It seems to me that the issue, constitutional issue, is whether we are criminalizing status, whether we are criminalizing something that violates status. And those are all examples that are used in our policy decisions of imposing, prohibiting conduct with respect to a limited class of persons as opposed to all the public. That's right. Yeah. That's right. I think the Court understands our position. Unless there are further questions, I'd like to see the remainder of my time. Let me say. Yes, Your Honor. Let's see if there are any further questions. Don, do you have any further questions? No, I'm fine. All right. Let's see if this gentleman has some rebuttal time. Thank you, Your Honor, and thank you. So we are challenging this as applied to homeless alcoholics, and our challenge is limited to that. And the facts that you describe, Your Honor, about rounding up homeless people and throwing them in jail over and over again is exactly what we allege in the complaint, and it's exactly what's happening on a daily basis. Our clients have been arrested and prosecuted anywhere from 11 to over 30 times in the space of, the greatest space of time is six years, and some of the time is shorter than that. Let me ask you, in each of those cases, they were charged with a crime, and presumably charged with a crime of drinking or whatever they were charged with. They could defend those and say they didn't drink or they didn't possess alcohol and address that particular problem. I gather in each of those cases where they defended, they were found guilty. Well, Your Honor, we think the larger point is that they're being targeted because of their status, their well-known status as habitual drunkards. It's an unlawful arrest. They have no right to arrest you or to arrest any habitual drunkard because of that status. They have no right. And if they do it, it's an arrest without probable cause. It's a violation of the Fourth Amendment. It could give rise to a civil 1983 suit. There are remedies for status arrests. They have to have probable cause of an act. Right, but, Your Honor, the act here for homeless alcoholics is an act they cannot avoid. They cannot avoid. They're homeless, so they have to do it in public, and they're alcoholics, so they're compelled to do it. Excuse me. What I'm trying to suggest here is that the Fourth Amendment is meant for situations much more than the Eighth of overreaching and overarching police and law enforcement misconduct. The Eighth Amendment goes much more to conditions of confinement and has much less to say with revising the substantive law. And when you're talking about police overreaching, you're talking about something that is very much within the Fourth Amendment's domain. And when you're talking about dividing this Virginia statute and say it can be constitutionally applied to one section and it can't be constitutionally applied to another, that gets you into the business of rewriting the state statute and presents all kinds of problems, all kinds of problems. And I don't understand why this has become an Eighth Amendment attack on this because there's no criminal provision. And it's important that Powell and Robinson and everything, they dealt with criminal statutes. Your Honor, I mean, we respectfully don't see a meaningful difference between Robinson and prohibiting drug addiction or being a homeless alcoholic and prohibiting homeless alcoholic in possession of alcohol. We don't see a meaningful difference between those two things. Then you're saying that there's no difference in America between the criminal and the civil law because in Robinson and Powell, weren't we dealing with crimes? And we are here too, Your Honor. We're dealing with possession by a homeless drunkard. Those are acts. But for a homeless alcoholic, it's a compelled act. So it's no different from their status as being a homeless alcoholic. A compelled act? You couldn't put one of our clients in jail for one day if the statute said it's prohibited to be a habitual drunkard, it's prohibited to be a homeless alcoholic. So is the possession of heroin then a compelled act? Is possession of heroin a compelled act? Is possession of heroin a compelled act? How far does your rationale stretch? Our rationale stretches to laws that are singling out particular groups and are not broad universal criminal prohibitions. The question was status versus conduct. And you were saying the simple possession by a homeless is a compelled act. And Judge Wilkinson's question goes back to my question. Is the possession of heroin a compelled act? Right. No, I understand the question. It's not who's doing it. Is it a compelled act? It could be a compelled act, but it's not an excuse to a universal crime because in that case. Not universal. We're not addressing universality. We're addressing whether the status of being an addict can be a crime. And the answer is no. That's right. That's correct, Your Honor. The possession of heroin by an addict can be, even though it's compelled. They're compelled as much as the alcoholics. Right, because the state's made a judgment that it's dangerous conduct that should be prohibited for everyone. Here they're singling out a group of people who can't control it. It doesn't matter. They could have passed a statute that it's only prohibited by persons who are addicts. In other words, the idea is the possession is not compelled. Sure, it results, but we don't base the criminal law on that fact. Unless it's so compelled it's inherent in being a drunkard or being an addict. And I think Robinson answered that question. Your Honor, we disagree because we think that with something like this, there's more than – something other than conduct that's driving the offense because the conduct is generally permissible for adults, and so it's not conduct that's driving and defining the offense. I see I'm out of time. I want to address the hypotheticals that your colleague on the other side talked about, about status. Remember one of them was the person that followed people or followed this person around and that would be okay for some people, but not for him because he was harassing her. Do you understand what I'm saying? The base of your argument is that, okay, we don't quarrel with things that are universally like narcotics. Correct. Universally forbidden. But what we are doing is saying our status makes this prohibition on us, which is not universally prohibited for other people, wrong. Okay, so remember the very end of the argument from the government where they were talking about instances in which they proffered conduct that would have been all right universally, but which was prohibited from a particular person, and they were saying that that was similar to – you don't remember that? I think referring to, for example, a sex offender who then has a supplemental prohibition. Yes, I think there's a real distinction there. A sex offender has been convicted of a very serious offense, and then after that there's certain supplemental prohibitions that can follow on that serious conviction. In our client's situation, there's no predicate offense required for being determined to be a habitual drunkard. There's no prior conviction that would justify putting one of our clients in prison for life, as you would have with a sex offender. But there is prior conduct. He has been, in the first level of this crime, he has been judged to be somebody that this will apply to, a habitual drunkard, right? Right, but not necessarily convicted of any offense that would justify a jail term. And for the sex offender, they've been convicted – So you think that that's the difference? I didn't think that – I thought that – I think that's one difference. I think another difference is there's – I mean, in our case, we have a very tight connection between the prohibition and the compulsion. The prohibition on possession, which is very – it's inherent to the status of being a homeless alcoholic. They can't avoid consuming alcohol and consuming it in public. The sex offender that uses the Internet all the time? Yeah, I don't – I mean, I'm not in position to judge about what exactly they're compelled to do or not, but it seems at least somewhat not as direct a connection as we have in our case. Listen, I had thought that your argument was pretty limited here. I mean, Judge Wilkinson's quite right. We don't see many of these Eighth Amendment status cases. The Supreme Court seems to have decided two of them. And I thought that the underlying – your submission was that this was a very narrow category and that you – there aren't a lot of other status cases. But if there are other status cases, that's what I want to get a feel from you. Right. There may be some others. I don't know of many, but of the one we just spoke about, I think there is a meaningful distinction between someone who's been convicted of a very serious offense that could carry a life term, for example, and then judgments made that they can get out with certain prohibitions that continue to apply to them versus our clients who don't have – You can make it a – you know, somebody's been annoying somebody so that they get – Well, I think there's a significant difference in the public risk assessment versus, in our situation, you know, a sex offender who's been convicted of a sex offense versus someone who's been deemed a habitual drunkard but wouldn't necessarily have been convicted of any criminal conduct. And again, I think you'd have to look at the prohibition to understand whether there's also a clear connection between the compulsion and the prohibition. From the examples that the state provided, I don't – right off the top of my head, I don't see the same connection. I appreciate that. Thank you, Your Honor. I want to just think about the good point that my colleague has made. I worry that we get into some trouble and begin to make a policy judgment ourselves when we try to compare the relative social harms of alcoholism and drug addiction and sexual compulsions and all that. It seems to me that the relative seriousness of those harms and the way to deal with them are very largely entrusted to the legislative branch. And I wonder if we, as a matter of policy, can say that the problems associated or that the social consequences associated in this one area are of a lesser dimension than the consequences associated with this in another area. In other words, I don't know what I would ground that relative determination on other than my own sort of thoughts about it, which aren't worth very much because I haven't been elected to anything. I tried to get elected, and that ended poorly. But that's the problem that I have. And again, I think there's still another distinction because the person has been convicted and the example that the State gave has been convicted of an offense that has been deemed that is universally prescribed that then leads to special additional prohibitions, which we don't have again in our case where there is no requirement that there be any prior conviction for the habitual drunkard status that then leads to the possession prohibition. Well, I don't think that there's a requirement that something be, that there be a prior conviction here. There's notice in a hearing determination if someone is or is not a habitual drunkard, then there's the application of an interdiction order, which, for example, when the State prohibits selling alcohol to minors, many of the minors may be very responsible citizens and never have had any run-in at all with the law. Historically, states have been, and this is a federalism problem in the sense that this is an area of traditional state competence, but the states have been entrusted with large discretion in the regulation of alcohol, and that's where when a regulation, when a prohibition against selling alcohol to minors, that's sort of a preventive and a prophylactic step that can be taken independently of any prior conviction. And just as a matter of their federal system, wouldn't the police power and the right to protect the rights of the welfare and safety and good health of the body politic give the states some latitude in an area such as this? Go ahead. I gave you the last word. Okay, yes. I mean, again, we think there's a distinction there with, I mean, traditionally there's been recognized different types of policies towards minors, and there's no distinction drawn between different types of minors. It's a prohibition for all minors, whereas for adults, virtually all adults are allowed, the state has made a judgment that they're allowed to possess alcohol, but those who are homeless and have no choice and are alcoholics and are compelled to do so in public, they're trapped by this. They have no choice to avoid the prohibition, whereas someone who is an alcoholic but not homeless, while it might be a similar problem, as your Honor noted, it's not taken away from the conduct. It's okay. I do want to thank you on both sides for your good arguments, and we will adjourn court and come down and greet you. Thank you, Your Honor. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Diana Gribbon Motz